[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action asking that a marriage be dissolved. All jurisdictional requirements for its maintenance have been met.
The parties intermarried on July 9, 1974 in Okinawa. They adopted a child on March 28, 1985. She is Michelle. The marriage has broken down irretrievably with no hope of reconciliation. The defendant was solely at fault for the breakdown and the plaintiff did not contribute to the breakdown in any way.
On March 12, 1990, the plaintiff had to have a colectomy and a cecostomy. This is an excision of a portion of the colon with the establishment of a permanent artificial opening into the large intestine. Prior to that time, the parties had sexual relations, vaginally, rectally and orally. Afterwards they could not perform all these acts which the defendant liked and enjoyed.
It was the defendant's job with the company he was employed by to take trips of several days duration to the Orient and to Europe. Early in 1991 after he returned from a trip to Germany he told the plaintiff that he did not love her, did not want her and that she should get a divorce. She did not know why he said that, and was curious about his statement. She happened on an attache case he was accustomed to take with him, opened it and found in it a black book with names of girls in Japan and Germany and also a package of condoms. She was shocked because she and the defendant did not use CT Page 7696 condoms. She asked the defendant about the package. He did not say anything and walked away without answering her. She felt bad, and was upset.
The defendant was called as a witness by the plaintiff. He was asked if he had sex with anyone other than the plaintiff between January 1, 1990 and June 1, 1991 and he answered that he did not remember having sex with anyone else.
It is a fair inference that the defendant committed adultery from his absences from home, his travels abroad, the plaintiff's operations, the black book containing the names of women in the places to which he was accustomed to travel, the package of condoms, the fact that he did not have sex prior to the time in 1991 when he told the plaintiff that he did not love her, did not want her and that she should get a divorce. The court so finds.
The marriage is dissolved.
The defendant shall pay the plaintiff each week $700 as alimony and shall also pay the plaintiff as alimony one-third (1/3) of his gross annual bonus immediately after receiving said bonus. These alimony payments shall terminate on the plaintiff's death, her remarriage or her cohabiting within the meaning of the statute relative thereto.
The plaintiff shall have sole custody of the child, and she shall make all decisions of a routine nature concerning the child's activities.
Visitation by the defendant with the child shall be liberal, flexible and reasonable.
Visitation will vary dependent on the time of year, related to whether or not school is in session. Holidays and vacation periods will be handled as separate items from the normal schedule and are detailed below. Weekends are defined as the period starting at 6:00 p.m. on Friday and ending at 7:00 p.m. on Sunday when school is in session on Monday, and 8:00 p.m. on all other Sundays.
During the school year, the child will reside with the defendant on 50% of the weekends in any calendar quarter, exclusive of holidays and vacation periods, during the school year.
During the summer vacation, the defendant will have the child CT Page 7697 two consecutive weeks and will be entitled to one more week in the summer which shall be non-consecutive. The defendant shall have the child for one week during either the winter vacation or the Easter vacation week.
When the child's birthday falls on a weekday, the child shall spend her birthday with the defendant. When the child's birthday, falls on a Saturday or Sunday, the child shall spend the day with the plaintiff and the other day with the defendant. The plaintiff will always have the child on Mother's Day and the plaintiff's birthday. The defendant will always have the child on Father's Day and the defendant's birthday.
Holidays are defined as the following:
 A) Martin Luther King's Birthday B) Washington's Birthday C) Good Friday through Easter Sunday D) Memorial Day E) Independence Day F) Labor Day G) Thanksgiving through the following weekend H) Christmas and New Year's (12/23 through 1/2)
For those holidays falling on a Friday or Monday, the three day period including the weekend would be considered as part of the holiday period.
Holidays will alternate between the parties, so that the child will spend every other holiday with the same party. In this way, in a two year period, she will spend each of the holidays with each party. Referring to A through H above, the schedule would begin implementation in 1993 with F with the plaintiff and G with the defendant. This means holidays will be spent as follows:
In Even Numbered Years (1994, 1996, 1998, etc.)
 Defendant: B, D, F, H Plaintiff: A, C, E, G
In Odd Numbered Years (1993, 1995, 1997, etc.)
 Defendant: A, C, E, G Plaintiff: B, D, F, H
CT Page 7698
This schedule may be modified at any time and in any manner by mutual agreement of the parties.
The party who has the child will give the other party reasonable telephone access to the child. Neither party will travel with the child outside the continental United States without written consent of the other party, which consent will not be unreasonably withheld. For each trip outside Connecticut, the parent with whom the child will travel, will provide the other parent with a full itinerary, including flight numbers, hotels to be stayed at and telephone numbers.
The defendant shall pay the sum of $300 per week to the plaintiff as child support while the child is a minor and is residing with the plaintiff.
The parties shall consult with each other on substantial questions including, but not limited to, religious upbringing, educational progress, significant changes in the social environment and non-emergency health care of the child. If the parties cannot agree upon any of such matters, the plaintiff shall make the final decision thereon. Each party shall be entitled to all information from any physicians, dentist, consultant or specialist, attending the child and to be furnished with copies of all reports given by such persons. Each parent shall be entitled to all information from any teachers who are giving instructions to the child and to be furnished with copies of all reports by such teachers or school. Each party is to furnish the other with any authorization necessary so that each may have full access to such information.
The plaintiff shall retain her individual one-half (1/2) interest in the family home at 137 Okenuck Way in Shelton. The defendant shall transfer to the plaintiff his individual one-half (1/2) interest in the home forthwith. The plaintiff shall take such property subject to the first mortgage thereon. The contents of the family home shall belong to the plaintiff except for the items listed on the document entitled "Schedule 1" attached hereto and incorporated herein by reference. The defendant may remove such items (except those numbered 13 and 14) at a time convenient to the plaintiff.
The defendant has a Cash Management Account with Merrill Lynch numbered 862-12W03. In it are 4030 shares of Pitney Bowes, Inc. stock. They are listed to the defendant and the plaintiff JTWROS. Said shares are transferred to the plaintiff alone free and clear CT Page 7699 of any liens, interest charges or any other charge of whatever kind or character. They shall be transferred forthwith and the defendant shall execute any documents necessary to effectuate the transfer of; the 4030 shares to the plaintiff.
The plaintiff shall make all payments on the first mortgage on the family home current to the date of this Memorandum of Decision and thereafter the plaintiff shall be responsible to pay such mortgage and shall hold the defendant harmless from any liability on such mortgage. For as long as the defendant's name is on the mortgage and he is current in his obligations to the plaintiff, he shall have the right should the plaintiff fall two payments behind to make the unpaid mortgage payments directly and to deduct the payments from his next upcoming alimony obligations.
The parties shall each have responsibilities for the debts shown on his or her Financial Affidavit. The court understands that the defendant has filed his 1992 tax return as a single, head of household. The plaintiff is therefore responsible for her 1992 tax return.
The court notes that the plaintiff claims she has limitations in her ability to find work. She shall forthwith apply for social security disability benefits.
Health insurance for the child shall be paid for by the defendant through his place of employment.
Life insurance on the child shall be paid for and owned by the defendant. The life insurance policy on the plaintiff shall be turned over to her at once.
The plaintiff will retain the leased 1991 Nissan Pathfinder that she drives with all rights and benefits thereto. She will be responsible for payments and indemnify and hold the defendant harmless from all liability connected therewith.
For as long as defendant's name is on the lease, and he is current in his obligations to the plaintiff, he shall have the right should plaintiff fall two payments behind, to make the unpaid car payments directly and deduct the payments from his next upcoming alimony obligation.
The defendant will retain the leased 1987 Nissan 300ZX that he drives with all the rights and benefits thereto. He will be CT Page 7700 responsible for payments and indemnify and hold the plaintiff harmless from all liability connected therewith.
Unreimbursed medical expenses for the child are to be borne equally by the parties. These expenses shall include all non elective uninsured medical, dental, orthodontic, prescription, and psychiatric bills of any kind and nature for the child for so long as there is a duty to support her. Nothing of a non emergency nature which costs more than $150 shall be undertaken without the prior written consent of the parent with whom the child is not then residing which consent shall not be unreasonably withheld. The parent with whom the child is residing will submit insurance claims for reimbursement and upon presenting the parent with whom the child is not residing with the insurance documentation of unreimbursed amount, the parent with whom the child is then residing will pay one half said amount to the health care provider.
School tuition for the child shall be borne equally by the parties. If the child attends private school, the parties will each pay one-half (1/2) the tuition directly to the institution.
The cost of health insurance for the plaintiff shall be borne by her. The defendant shall cooperate to provide COBRA coverage for health insurance for the plaintiff as available to her through his place of employment for so long as the law allows. The plaintiff will be solely responsible for the cost of the policy and any of her unreimbursed medical expenses. If the plaintiff is threatened with cancellation of her health insurance for failing to pay the premiums due and the defendant is current in his obligations to her, the defendant should have the right to make said payments in her behalf and to deduct the amount from her next upcoming alimony obligation.
The defendant shall maintain on his life, life insurance in a sum sufficient to satisfy all his obligations detailed herein.
The defendant shall continue to hold the bonds he presently has in trust for the child.
The plaintiff's claim that the defendant was in arrears as to his obligation to the plaintiff under the pendente lite orders was not pursued before all parties rested, hence the court has nothing before it to make a ruling on if, in fact, there was an arrearage.
The plaintiff shall pay the fees and expenses of her own CT Page 7701 attorney.
The defendant shall pay the fees and expenses of his own attorney. Each party shall pay one half of the fees and expenses of the attorney of the child.
The court notes that the plaintiff has relinquished any claim she might have on the defendant's 401K plan, his retirement pension, his Pitney Bowes stock options and his savings and checking accounts at Pitney Bowes and the Shelton Savings Bank.
The plaintiff may claim the child as her dependent for federal and state tax purposes.
THOMAS J. O'SULLIVAN, TRIAL REFEREE
SCHEDULE 1
1) Those items currently in the possession of Benedict J. Caffe which have already been removed from 137 Okenuck Way.
2) Furniture items which were heirlooms from Ben's grandmother which are the bedroom dresser, the radio box that was on the landing and the small standing table that was in the dining room.
3) All automotive, carpentry, and construction tools. This not only includes all hand tools, but the radial arm saw, hand power tools, chain saw, and all related supplies and components.
4) All clothing and personal effects belonging to Ben.
5) Oil painting that was in the living room, originally acquired in California.
6) Lithographs that were in the master bedroom.
7) All books, catalogues, and files in the house, except those books in Japanese which belong to Rimiko. Additionally, the Encyclopedia and related educational books will remain with Rimiko.
8) The dart board, darts, chess board and men, backgammon set, and related accessories. CT Page 7702
9) All trophies, awards, and prizes which were given to Ben.
10) Men's bicycle, fishing poles, and both sets of the camping gear.
11) German beer mug from Mark Putnam's wedding and flask from Rosanne Clark's wedding.
12) 38 caliber Smith and Wesson detective special pistol and ammunition supplies.
13) At the Wife's discretion, either the dining room set or kitchen table and chairs.
14) Upright freezer currently in garage.